Gordon R. SHEFFIELD, Appellant,

v.

CENTRAL FREIGHT LINES, INC. Appellee.

No. 17185.

Court of Civil Appeals of Texas.

Dallas.

Dec. 20, 1968.

Dennis G. Brewer, and James E. Price, Irving, for appellant.

Ralph E. Hartman, of Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellee.

BATEMAN, Justice.

The question here is whether the appellee Central Freight Lines, Inc. is liable to the appellant Gordon R. Sheffield for injuries inflicted upon him by appellee's employee Joe Jarvis in a fist fight. At the conclusion of the evidence the trial court instructed the jury to return a verdict for the appellee and rendered judgment that appellant take nothing. We affirm on the ground that there was no evidence that Jarvis was acting in the scope of his employment in fighting with appellant.

## Facts

The facts are practically undisputed. The appellant and Joe Jarvis were truck drivers, appellant being employed by Red Arrow Freight Lines, Inc. and Jarvis by the appellee Central Freight Lines, Inc. Appellant had backed his truck up to the loading dock of another freight line, and Jarvis was backing his truck up to the same dock. In doing so his truck collided with appellant's truck and knocked its door off. The two drivers were strangers to each other. When appellant told Jarvis he had knocked the door off of appellant's truck, Jarvis asked why appellant had not "hollered" at him, and when appellant told him he did "holler" at him Jarvis called him "a god-damn liar." Appellant made no response to this rather forceful criticism of his veracity except to insist that he had warned Jarvis of the impending collision. However, he immediately called his supervisor, Jim Williams, on the telephone. Jarvis called his office to report the accident, in response to which one Earl Vincell, one of appellee's route supervisors, arrived. Vincell talked to Jarvis, then looked at the damaged Red Arrow truck, then told appellant that appellee would pay for the damage. Jim Williams, the Red Arrow supervisor, then arrived at the scene and was also told by Vincell that appellee would pay for the damage to the Red Arrow truck. Not being satisfied with this, Williams approached Jarvis and asked him, "Did you call my man a liar?" The ensuing conversation very quickly erupted into a fist fight between Jarvis and Williams. Jarvis, who had had training as a pugilist and had been twice champion of a local Golden Gloves tournament, quickly knocked Williams down and, according to appellant's testimony (although denied by Jarvis), continued to beat Williams while the latter was sitting down. Appellant then approached Jarvis from the rear and pulled him away from Williams by putting his arm around his neck. Appellant said that as soon as he separated Jarvis and Williams he turned Jarvis loose and did not strike him, while Jarvis testified that when appellant put his arm around his, Jarvis', neck he beat Jarvis about the head with his other fist, and that he, Jarvis, had to remove appellant from his back by force. Both men testified that thereupon Jarvis assaulted appellant and delivered numerous blows to his head and body. Vincell stood by and did not do or say anything to stop either altercation. Appellant testified that Williams arrived at the scene about thirty minutes after he first called him, that after Vincell had been there about ten minutes and told him that appellee would have his truck repaired, he called Williams again, and that it was about fifteen or twenty minutes thereafter that Williams arrived at the scene.

Transport Insurance Company intervened seeking reimbursement for certain workmen's compensation benefits it had paid on account of appellant's injuries. It offered no evidence, filed no motion for new trial, and does not appeal from the adverse judgment.

## Opinion

█ In attempting to establish appellee's liability under the doctrine of *respondeat superior* appellant assumed the burden of showing that the wrongful act of the servant was performed within the scope of his employment. This he failed to do.

█ When a servant turns aside from the performance of the work for which he was hired, even though momentarily, and engages in activities not in furtherance of

his master's business, but to accomplish some purpose of his own, the master is not responsible for such activities. Hidalgo v. Gulf, C. & S. F. Ry. Co., 60 Tex.Civ.App. 433, 128 S.W. 683 (Tex.Civ.App., Galveston 1910, writ ref'd); Jax Beer Co. v. Tucker, 146 S.W.2d 436 (Tex.Civ.App., Dallas 1940, writ dism'd jdgmt cor.).

█ In this case the assault complained of did not arise directly out of the conversation between Jarvis and appellant concerning the collision and damage to the Red Arrow truck. That matter had already been closed by Vincell's assurance that appellee would pay for the damage and at least thirty minutes had elapsed when Williams, the Red Arrow supervisor, in spite of Vincell's assurance, took it upon himself to upbraid Jarvis for calling appellant a liar, followed by appellant's injecting himself into the fracas to assist Williams. By that time the situation had degenerated into a personal quarrel in which the acts of the participants were motivated, not by any sense of duty to their respective employers, not by any desire to promote or further their employers' business or property interests, but wholly by their personal animosities. Any connection the fight may be said to have had with the business of either master was quite remote and incidental. Home Telephone & Electric Co. v. Branton, 7 S.W.2d 627, 629 (Tex.Civ.App., Eastland 1928, affirmed Tex.Com.App., 23 S.W.2d 294). Under such circumstances the doctrine of *respondeat superior* is not available to the injured party. Texas & P. Ry. Co. v. Hagenloh, 151 Tex. 191, 247 S.W.2d 236 (1952); and Humbert v. Adams, 390 S.W.2d 857 (Tex.Civ.App., Dallas 1965, writ ref'd n. r. e.).

█ Appellant also argues that appellee is liable to him because of the failure of its other employee, Vincell, to intercede and endeavor to stop the fight, which appellant says amounted to ratification by appellee of the assault. We do not agree with appellant. There is nothing in the record before us to indicate any legal duty on the part of either appellee or Vincell to enter or endeavor to stop these personal altercations, and consequently there would be no liability on either of them for withholding such interference.

Moreover, even if Vincell could be said to owe such a duty, it would be from a purely humanitarian viewpoint personal to him and would not arise out of his employment by appellee. His failure to perform such supposed duty, therefore, would not constitute a breach by appellee of any duty owing by it to appellant.

We find no evidence of ratification. As said in Home Telephone & Electric Co. v. Branton, supra:

"There are but few situations in which one may be constituted a wrongdoer by ratification where such wrong consists of an assault and battery. In the case of Dillingham v. Anthony, 73 Tex. 47, 11 S. W. 139, 3 L.R.A. 634, 15 Am.St.Rep. 753, Chief Justice Stayton quotes with approval the following language from Cooley on Torts:

'In order to constitute one a wrongdoer by ratification the original act must have been done in his interest, or been intended to further some purpose of his own.'

"Had the evidence justified the conclusion that appellant's officers, after learning of the assault, believed it was justified and approved same, such action would not amount to a ratification of the original act, because it was not done in appellant's interest or in the furtherance of appellant's business or for its benefit."

The trial court was correct in instructing the verdict for appellee. Both of appellant's points of error are overruled and the judgment is

Affirmed.