**Affirmed and Opinion Filed November 20, 2014**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01183-CV

**NICOLE ANDERSON, Appellant**

**V.**

**IMPACT FLOORS OF TEXAS, L.P., Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 12-04361**

## MEMORANDUM OPINION

Before Justices FitzGerald, Fillmore, and Stoddart
Opinion by Justice FitzGerald

Appellant Nicole Anderson sued her employer, appellee Impact Floors of Texas, L.P., for personal injuries. She alleged that she was sexually assaulted by a fellow employee on appellee's premises after business hours. The trial judge granted summary judgment in favor of appellee. Concluding that appellant adduced no evidence that appellee ratified the alleged attack or that appellee owed appellant a duty to protect her from criminal conduct, we affirm.

# I. BACKGROUND

## A. Factual allegations

Appellant alleged the following facts in her live pleading.[1] In August 2011, appellant was employed by appellee as a credit manager. She worked in appellee's Dallas, Texas office. Her co-workers included Henry Lopez, who was a customer service representative, and Taylor Whitehead, who was the customer service manager and Lopez's supervisor. During appellant's employment, Lopez engaged in sexually harassing behavior towards appellant and other female employees. Moreover, appellee not only permitted but often encouraged the drinking of alcohol in the office.

Appellant further alleged that Whitehead brought alcoholic beverages to work on August 9, 2011, to celebrate his birthday. Several employees stayed after work to celebrate and drink. Eventually, only appellant, Lopez, and Whitehead were left. After receiving a text message from her husband, appellant prepared to leave. The next thing she remembers is that her sister walked into a bathroom (on appellee's premises) and discovered Lopez on top of appellant with appellant's skirt pulled up. After going to the hospital, appellant learned she had been raped.

## B. Procedural history

Appellant sued appellee. In her live pleading, appellant asserted claims for "assault and battery" and for negligence in failing to provide a safe workplace. Appellee filed a traditional and no-evidence motion for summary judgment seeking judgment on the entire case. Appellant filed a response. Appellee then filed a "supplement" to its summary-judgment motion that added one more "traditional" ground for summary judgment.

The trial judge held a hearing and granted appellee's motion for summary judgment. Appellant timely appealed.

---

[1] *See Ely v. Gen. Motors Corp.*, 927 S.W.2d 774, 782 (Tex. App.—Texarkana 1996, writ denied) (although pleadings are not proof, they frame the issues for purposes of summary judgment).

## II. ANALYSIS

Appellant raises four issues on appeal. In her second issue, she contends that she adduced sufficient evidence to survive appellee's no-evidence attack on appellant's claim for assault and battery. In her third issue, she contends that she adduced sufficient evidence to survive appellee's no-evidence attack on her claim for negligent failure to provide a safe workplace. It is unnecessary for us to address her first and fourth issues in order to dispose of the appeal.

### A. Standard of review

We review a summary judgment de novo.[2] When we review a no-evidence summary judgment, we inquire whether the nonmovant adduced sufficient evidence to raise a genuine issue of material fact on the challenged elements.[3] We review the evidence in the light most favorable to the respondent against whom the summary judgment was rendered.[4] If the respondent adduces more than a scintilla of probative evidence to raise a genuine issue of material fact, a no-evidence summary judgment cannot properly be granted.[5] That is, a no-evidence summary judgment should be reversed if the evidence is sufficient for reasonable and fair-minded jurors to differ in their conclusions.[6]

### B. Assault and battery

With respect to appellant's claim for assault and battery,[7] appellant alleged that appellee ratified Lopez's assault through Whitehead's conduct. Appellee moved for summary judgment

---

[2] *Smith v. Deneve*, 285 S.W.3d 904, 909 (Tex. App.—Dallas 2009, no pet.).

[3] *Id*.

[4] *Anderton v. Cawley*, 378 S.W.3d 38, 46 (Tex. App.—Dallas 2012, no pet.).

[5] *Id*.

[6] *Id*.

[7] The supreme court has observed that the terms *assault*, *battery*, and *assault and battery* are used interchangeably in the civil context. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 801 n.4 (Tex. 2010).

on the ground that appellant had no evidence that appellee ratified Lopez's conduct. Appellant argues that summary judgment could not properly be based on this ground.

Under Texas law, an intentional tort such as assault generally is not within the scope of an employee's authority, and so an employer generally is not vicariously liable for an employee's assault.[8] A claimant can overcome this rule by showing that the employer ratified the employee's tortious conduct.[9] Appellant relies on the Austin Court of Appeals' decision in *Wal-Mart Stores, Inc. v. Itz*[10] for the proposition that ratification requires proof that (1) a vice principal for appellant (2) knew about and ratified Lopez's assault (3) in the course of the vice principal's employment.[11] We note that our own precedents require an additional element—the employee's intentional tort must have been committed in the employer's interest or with the intent to further the employer's interest.[12] But we need not discuss this element in light of our analysis of the *Itz* elements.

Assuming appellant raised a fact issue as to Whitehead's status as a vice principal, we conclude that she adduced no evidence that Whitehead knew about the assault so as to be able to ratify it on appellee's behalf.

There was evidence that someone called appellant's sister Linda on the night in question and told her that appellant was passed out and Linda needed to come pick her up. Linda testified in deposition that she drove to appellee's office and arrived around midnight. She banged on a door until Whitehead let her in. When Whitehead opened the door for her, he said that she

---

[8] *See Bryant v. Lucent Techs., Inc.*, 175 S.W.3d 845, 850–51 (Tex. App.—Waco 2005, pet. denied); *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 680–81 (Tex. App.—El Paso 1997, writ denied); *see also Sheffield v. Cent. Freight Lines, Inc.*, 435 S.W.2d 954, 956 (Tex. Civ. App.—Dallas 1968, no writ).

[9] *See Sheffield*, 435 S.W.2d at 956.

[10] 21 S.W.3d 456 (Tex. App.—Austin 2000, pet. denied).

[11] *See id.* at 480–81.

[12] *See Sheffield*, 435 S.W.2d at 956; *see also Geiger v. Varo, Inc.*, No. 05-93-1511-CV, 1994 WL 246159, at *6 (Tex. App.—Dallas June 6, 1994, writ denied) (not designated for publication) (following *Sheffield* and holding that employer had not ratified employee's sexual assault of another employee).

should wait a minute and that he had to make sure everything was okay. But he stayed there with Linda, and within ten seconds both of them went into the building. While they were walking down a hallway, Whitehead said, "They're in the bathroom up front." As they were passing a different bathroom, Linda heard a noise inside and asked Whitehead, "Are you sure they're not in here?" and he replied, "I don't know. Maybe they moved." Linda opened the bathroom door and saw appellant and Lopez inside. Appellant was lying face down on the floor, and Lopez was on top of her. Linda testified, "He was raping her." Linda saw Lopez stand up, and then she ran back to her car and called 911.

Whitehead testified in deposition that the police came to the office and told him to go outside, which he did. Then the police brought appellant and Lopez out of the building. The police separated appellant, Lopez, and Whitehead, and that is when Whitehead found out that a crime had allegedly been committed. Whitehead testified that he was "quite intoxicated" that night, and that appellant and Lopez were intoxicated too. He also testified that he did not see anything and did not know what happened between appellant and Lopez in the bathroom. According to the police report, appellant admitted to the officers that she was under the influence of alcohol, denied that Lopez had touched her or attempted to engage in sexual conduct with her, and was laughing and did not appear to be in distress. The police report also recites that Whitehead said "every male at their workplace wanted to have sex with [appellant]," although he testified in deposition that he did not recall saying that.

Other proof filed by appellant showed that appellee fired Lopez the next day and fired Whitehead about three weeks later. Appellant put on evidence that appellee waited three weeks to fire Whitehead because it believed that keeping Whitehead employed was the best way "to get him to communicate what happened with the incident." Finally, appellant filed an affidavit by a

person who was a contractor for appellee from 2008 through 2010, and he testified that appellee's workplace was "minimally supervised, sexually charged, and alcohol-friendly."

Reviewing appellant's evidence in the light most favorable to her case, we conclude that there is no evidence that Whitehead knew Lopez had assaulted appellant and ratified that conduct. Appellant argues that we should draw an inference of knowledge because the evidence shows (1) Whitehead knew that appellee's male employees wanted to have sex with appellant, (2) Whitehead left appellant unconscious and intoxicated in a bathroom with Lopez, who was also intoxicated, and (3) Whitehead attempted to divert appellant's sister away from the bathroom in which he had previously left appellant and Lopez. The first fact, even if supported by the evidence, is insufficient to support a reasonable inference that Whitehead knew that Lopez had sexually assaulted appellant on this occasion. Evidence that male employees generally found appellant sexually attractive does not imply any specific knowledge on Whitehead's part that Lopez had assaulted appellant on this occasion.

As to the other facts cited by appellant, we conclude that they do not support an inference that Whitehead knew about Lopez's assault as or after it happened so as to be able to ratify it as appellee's vice principal. Whitehead testified in his deposition as follows:

Q.    You testified earlier that on the night of August 9th, you were quite intoxicated, correct?

A.    That would be correct.

Q.    Such to the point that you were stumbling down the hall, correct?

A.    Yes.

Q.    And Henry Lopez was intoxicated?

A.    Yes.

Q.    And [appellant] was intoxicated?

A.    Yes.

–6–

Q.     And when you left the bathroom on the night of August 9th, [appellant] was passed out on the floor, correct?

A.     That would be correct.

Q.     And Henry Lopez was with her and intoxicated, correct?

A.     Yes.

Whitehead was also asked, "Did you have any idea what may—may or may not have occurred in the bathroom where Henry Lopez and [appellant] were?" and he replied, "No, sir." This evidence, taken as a whole, does not show that Whitehead knew that Lopez had assaulted appellant. Although there is evidence that Whitehead knew, at some unspecified point in time, that appellant was unconscious and Lopez was intoxicated, the evidence does not support a reasonable inference that Whitehead actually knew Lopez had assaulted appellant.

We further conclude that the evidence does not support appellant's contention that Whitehead "attempted to divert" Linda away from the bathroom where the assault occurred. Linda testified that after Whitehead let her into the building, he was leading her down a hallway to the bathroom where he said appellant and Lopez were. Linda was walking close behind Whitehead, and she heard a sound coming from a different bathroom. She asked Whitehead, "Are you sure they're not in here?" and he replied, "I don't know. Maybe they moved." At that time, Linda was standing close enough to the bathroom door to touch it, and she pushed the door open. There is no evidence that Whitehead took any action to prevent Linda from opening the door. We conclude that the mere fact that Whitehead, who was admittedly intoxicated, told Linda that appellant and Lopez were in a different bathroom than the one in which Linda found them does not support a reasonable inference that Whitehead actually knew an assault was taking place or had taken place. Such an inference would be no more than speculation and conjecture.[13]

---

[13] *See Connaway v. Vill. Farms, L.P.*, 200 S.W.3d 353, 358 (Tex. App.—Dallas 2006, no pet.) (stating that speculation and conjecture will not defeat summary judgment).

Appellant also argues that Whitehead ratified Lopez's assault because he took no action to report the assault to upper management the next day. But Whitehead's failure to report is as consistent with ignorance as it is with knowledge. As shown above, there is no evidence that Whitehead witnessed the assault or otherwise acquired actual knowledge that it had occurred the previous night. Although the police told Whitehead that a crime had been alleged, the police report indicates that when the police arrived at the scene, appellant herself denied that any sexual conduct had occurred and appeared to be in no distress. There is no evidence giving rise to a reasonable inference that when Whitehead went to work the next morning, he knew that Lopez had assaulted appellant. And appellant's own evidence shows that appellee told Lopez to leave appellee's premises on August 10 and regarded him as terminated on that date, although the termination paperwork was not filled out for several days thereafter.

Appellant adduced no evidence that a vice principal for appellee possessed knowledge of the assault after it occurred and knowingly ratified it on appellee's behalf. Accordingly, we reject appellant's second issue on appeal.

## C. Negligent failure to provide a safe workplace

Appellant's other claim was that appellee negligently failed to provide her with a safe workplace. In its no-evidence motion for summary judgment, appellee contended that appellant could produce no evidence that appellee owed her a duty of care, that appellee breached such a duty if it existed, or that a breach proximately caused her any injuries. Appellant argues that summary judgment could not properly be based on these grounds.

We resolve this issue on the element of duty. The threshold question is what rule of duty we should apply on the facts of this case.[14] Appellee argues that this case is governed by the

---

[14] *See Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 399 (Tex. App.—Dallas 2012, no pet.) ("The existence of a legal duty is a question of law for the court to decide based on the particular facts surrounding the occurrence in question.").

familiar rule from *Timberwalk Apartments, Partners, Inc. v. Cain*[15]: a premises owner owes an invitee a duty of protection from criminal conduct only if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee.[16] Appellant argues that we should not apply the *Timberwalk* rule, pointing out that *Timberwalk* "did not involve an employer–employee safe workplace issue" and that *Timberwalk* involved a criminal act by a third party rather than by a co-worker. Appellant also cites the supreme court's 1955 decision in *Sears, Roebuck & Co. v. Robinson*[17] for the proposition that "[t]he two fields of law (landowner–invitee and master–servant), are entirely separate, and they should be kept so."[18]

In the *Sears, Roebuck* decision, the supreme court observed that "the nature of the duty of the landowner to use reasonable care to make his premises reasonably safe for the use of his invitees may, in all material respects, be identical with the nature of the duty of the master to use reasonable care to provide his servant with a reasonably safe place to work."[19] Building on this observation, both of the Houston Courts of Appeals have held that *Timberwalk* applies when an employee is injured on the job by another's criminal conduct and then sues his or her employer for failing to provide a safe workplace.[20] But this case is factually distinguishable from *Sears, Roebuck* and the Houston cases in that appellant does not allege that she was injured on the job. Rather, the only evidence on point is that she was drinking and socializing on appellee's premises after business hours when she was attacked. As a result, her status as an employee is immaterial, and appellee's legal duty to her depended on whether she was an invitee, licensee, or

[15] 972 S.W.2d 749 (Tex. 1998).

[16] *Id.* at 756.

[17] 280 S.W.2d 238 (Tex. 1955).

[18] *Id.* at 240.

[19] *Id.*

[20] *See Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 466–67 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Allen v. Connolly*, 158 S.W.3d 61, 65–66 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

trespasser at the time of the alleged assault.[21] Because appellant's claim fails even under the standard most favorable to her, which is the invitee standard, we will assume without deciding that appellant was an invitee at the time of the alleged assault. Accordingly, *Timberwalk* supplies the rule of decision.[22]

Under *Timberwalk*, a premises owner owes a duty to protect an invitee from criminal acts if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee.[23] Foreseeability is established by evidence of specific previous crimes on or near the premises.[24] To determine whether the risk of criminal conduct is foreseeable, we weigh the evidence of prior crimes in terms of proximity, publicity, recency, frequency, and similarity.[25] In this case, appellant adduced no evidence of any similar crimes on or near appellee's premises. It necessarily follows that there is no evidence that appellee owed her any duty to protect her from criminal conduct.[26]

Appellant also asserts that appellee owed her a duty to prevent the alleged assault under the rubric of the employer's duty to supervise its employees. We reject this assertion as inadequately briefed. Appellant cites only one appellate decision in support of her assertion, and that factually inapposite case stands only for the general proposition that an employer owes its employees a duty to adequately hire, train, and supervise its employees.[27] She cites no authority and provides no legal argument explaining how the duty to supervise might apply to the scenario

---

[21] *See Peerenboom v. HSP Foods, Inc.*, 910 S.W.2d 156, 161–63 (Tex. App.—Waco 1995, no writ) (concluding that off-duty employee was a trespasser while present in area of her employer's premises without invitation or license).

[22] *See Timberwalk*, 972 S.W.2d at 756 (setting forth scope of owner's duty "to protect *invitees* from criminal acts of third parties") (emphasis added).

[23] *Id.*

[24] *See id.* at 757; *Park v. Exxon Mobil Corp.*, 429 S.W.3d 142, 145 (Tex. App.—Dallas 2014, pet. denied).

[25] *Park*, 429 S.W.3d at 145.

[26] *See id.* (concluding as a matter of law that premises owner owed no duty under the *Timberwalk* factors).

[27] *See Ching Enters., Inc. v. Barahona*, No. 01-07-00454-CV, 2008 WL 4006758, at *5 (Tex. App.—Houston [1st Dist.] Aug. 28, 2008, no pet.) (mem. op.) (involving employee who injured her hand while working and using allegedly dangerous equipment).

presented in this case, in which the incident occurred after business hours and no one involved in the incident was working at the time.[28]

We reject appellant's third issue on appeal.

### III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

131183F.P05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

---

[28] *See* TEX. R. APP. P. 38.1.



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

NICOLE ANDERSON, Appellant

No. 05-13-01183-CV      V.

IMPACT FLOORS OF TEXAS, L.P.,
Appellee

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 12-04361.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Stoddart participating.

      In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

      It is **ORDERED** that appellee Impact Floors of Texas, L.P. recover its costs of this appeal from appellant Nicole Anderson.

Judgment entered November 20, 2014.