

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00328-CV

———————————————

SUSAN E. HARRIMAN, Appellant

V.

LESLIE HYMAN AND PULMAN, CAPPUCCIO & PULLEN, LLP, Appellees

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-352085-24

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant Susan Harriman filed this lawsuit against Leslie Hyman and Pullman, Cappuccio & Pullen, LLP (collectively Hyman Appellees) alleging that the Hyman Appellees failed to properly represent her in a defamation lawsuit in 2017. The Hyman Appellees filed no-evidence and traditional summary judgment motions claiming that Harriman provided no evidence that their actions proximately caused any injury to her and that the legal malpractice claim is time barred, and the trial court rendered summary judgment granting the motions. Because Harriman failed to produce sufficient evidence to defeat the Hyman Appellees' no-evidence motion, we will affirm. *See* Tex. R. App. P. 47.1.

## I. PROCEDURAL HISTORY

As relevant to the alleged legal malpractice suit subject to this appeal, the Hyman Appellees previously represented Harriman in a lawsuit to pursue defamation-based claims against Palmaz Scientific, Inc., Julio Palmaz, M.D., and certain individuals (collectively, the Palmaz Defendants) and to defend her against the Palmaz Defendants' counterclaims in Dallas County (the Underlying Lawsuit). During the course of that representation, Hyman participated in a hearing to unseal court records (the Boyle files[1]) in Bexar County (2017 hearing).

---

[1]We note that Harriman claims that she was given a copy of the Boyle files by a "fellow whistleblower," that her expert in the Underlying Lawsuit gained a copy of the file prior to the 2017 hearing, and that the expert shared his "report and supporting documents" with Hyman. According to Harriman, when Hyman reviewed these

During the 2017 hearing, Hyman argued that the sealed Boyle files were relevant to her representation of Harriman in the Underlying Lawsuit because Dr. Julio Palmaz was a party to both cases. Hyman also argued that Harriman was not an original party to the Bexar County case and thus did not have prior notice of the hearing on the final permanent sealing order—and that, even if she'd had notice, the filing of the Underlying Lawsuit constituted changed circumstances that permitted Harriman to move to unseal the records.

Another party—the trustee of Palma Scientific Litigation Trust, an entity created from the bankruptcy of Palmaz Scientific, Inc.—joined in Harriman's motion to unseal the Boyle files. The trustee was likewise not an original party to the Bexar County lawsuit and did not have notice of the hearing on the final permanent sealing order.

Palmaz opposed the motion to unseal the record and argued at the hearing that the Boyle files should remain sealed because the documents impacted "third parties" as well and should remain classified and confidential.[2] Palmaz also claimed that the motion to unseal the Boyle files was nothing more than Harriman's attempt to

---

documents and discovered there was a sealing order, she refused to use Harriman's copy of the Boyle file. Hyman advised Harriman that a motion to unseal the file was necessary. In her petition, Harriman alleges that she opposed Hyman's filing of the motion to unseal but she also acknowledges that she was aware of the motion and the 2017 hearing to unseal.

[2]There was an extended discussion from Palmaz about the purported lack of notice of the 2017 hearing to all impacted parties, but this argument was abandoned during the hearing.

circumvent discovery in the Underlying Lawsuit.[3] Palmaz alleged that discovery was stayed in the Underlying Lawsuit and accused Harriman of refusing to sit for a deposition, respond to disclosure responses, or produce witness statements. According to Palmaz's attorney, Harriman had been subpoenaed to appear at the motion to unseal hearing but had filed a motion to quash the subpoena the night before the hearing.[4]

In addition to Harriman's alleged discovery avoidance, Palmaz argued that because Harriman had notice of the original hearing on the final permanent sealing order, she was "barred" from attempting to unseal the Boyle files. In support of this assertion, Palmaz attempted to introduce an e-mail—purportedly sent from an account belonging to Harriman—with the subject line "Palma[z] court case." Both Hyman and the trustee's attorney objected to the e-mail on hearsay and authenticity grounds. Following a discussion off the record, Hyman stipulated—for the purpose of that hearing only—that Harriman had notice of the hearing for the final sealing order before

---

[3]The Hyman Appellees confirmed Harriman's desire to avoid discovery in their motions for summary judgment.

[4]There was no documentation in the record of the motion to quash the subpoena, but we note that Harriman was not present at the hearing. Harriman's allegations against the Hyman Appellees stem from her alleged lack of knowledge about the arguments made by Hyman during the 2017 hearing and her disagreement with their representation of her during the same.

4

it was entered.[5]  However, Hyman argued that any such notice had no impact on Harriman's request to unseal the Boyle files because Rule 76a[6] of the Rules of Civil Procedure permitted a party with notice to proceed on a motion to unseal when there are changed circumstances.  Hyman claimed that the Underlying Lawsuit was sufficient to establish the "changed circumstances" required under Rule 76a.

Ultimately, the Bexar County district court denied the motion to unseal.  The district court provided no reasoning for its decision.

Approximately one year later, in November 2018, a mediated settlement agreement was signed by the parties in the Underlying Lawsuit, and a joint notice of nonsuit with prejudice was granted by the trial court on November 27, 2018.[7]  No appeal was filed, and the judgment became final on December 27, 2018.  *See* Tex. R. App. P. 26.1.

---

[5]The e-mail was not admitted as an exhibit during the 2017 hearing, and we note that Hyman only stipulated to Harriman's *notice* of the final sealing order before it was entered, and not to the e-mail or its alleged contents specifically.

[6]"An order sealing or unsealing court records shall not be reconsidered on motion of any party or intervenor who had actual notice of the hearing preceding issuance of the order, without first showing changed circumstances materially affecting the order."  Tex. R. Civ. P. 76a(7).

[7]According to the Hyman Appellees, Harriman signed the settlement agreement with full knowledge that her copy of the Boyle file was not used in the preceding negotiations.

Just over two years later, in March 2022, Harriman sent an e-mail to Hyman requesting a copy of the transcript from the 2017 hearing. Hyman sent an e-mail back to Harriman just over one month later with the subject "Transcript," and the printout of the e-mail reflects that an attachment titled "BOYLE V ADVANCED 12-21-17.pdf" was also included.

On April 19, 2024, Harriman filed the original petition in this lawsuit, alleging professional negligence[8]—legal malpractice—on the part of the Hyman Appellees. Harriman complained in her petition that Hyman's representation during the motion to unseal the records in Bexar County forced her into an unfavorable settlement of the Underlying Lawsuit. The Hyman Appellees' answer alleged several affirmative defenses, including that Harriman's claims are time barred; that her damages, if any, are unrelated to any act or omission of the Hyman Appellees; and that the Hyman Appellees' actions were not the proximate cause of any alleged damages suffered by Harriman.

The Hyman Appellees subsequently filed both traditional and no-evidence motions for summary judgment; the trial court granted both motions, and this appeal followed.

---

[8]Harriman initially alleged a breach of contract claim as well, but filed a notice of partial nonsuit as to that claim on July 22, 2024.

## II. DISCUSSION

When a party moves for summary judgment under both Rule 166a(c) (traditional grounds) and Rule 166a(i) (no-evidence grounds),[9] we will first review the trial court's judgment as to the standards of Rule 166a(i). *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). Then, if the nonmovant failed to produce more than a scintilla of evidence under that burden, there is no need to analyze whether the appellee's summary-judgment proof satisfied the Rule 166a(c) burden, as it necessarily fails. *Id.*, *see Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023). Thus, we begin with Harriman's second issue—the trial court's grant of the Hyman Appellees' no-evidence motion for summary judgment.

### A. STANDARD OF REVIEW

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that no evidence supports an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which no evidence exists. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court

---

[9]The Texas Supreme Court amended Rule 166a, effective March 1, 2026. *See* Sup. Ct. of Tex., Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure, Misc. Docket No. 26-9012 (Feb. 27, 2026). But the "amendments apply only to a motion for summary judgment filed on or after March 1, 2026," *id.*, so they are inapplicable here. All citations to Rule 166a reference the prior version of the Rule, which continues to govern motions for summary judgment filed before March 1, 2026.

must grant the motion unless the nonmovant produces summary-judgment evidence that raises a genuine, material fact issue. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020).

A no-evidence summary judgment is essentially a pretrial directed verdict because it requires the nonmovant to present evidence sufficient to raise a genuine, material fact issue on each challenged element. *Timpte Indus.*, 286 S.W.3d at 310. We apply the same legal-sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary

8

judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch*, 118 S.W.3d at 751.

Less than a scintilla of evidence exists when the evidence is so weak that it does nothing more than create a mere surmise or suspicion of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

## B.  APPLICABLE LAW: NEGLIGENCE

A legal malpractice claim is based on negligence. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). To prevail on a legal malpractice claim, the plaintiff must prove that (1) the attorney owed a duty to the plaintiff; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) the plaintiff suffered damages. *Alexander v. Turtur & Assoc., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004) (quoting *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995)); *Parsons v. Baron*, No. 02-09-00380-CV, 2011 WL 3546617, at *2 (Tex. App.—Fort Worth Aug. 11, 2011, pet. denied) (mem. op.).

The parties focused the majority of their arguments on the proximate cause element.[10] Because the plaintiff must prove all four elements, we likewise concentrate

---

[10]We note that in Texas, the standard of care for a lawyer is one that would be exercised by a reasonably prudent attorney. *See Hall v. Rutherford*, 911 S.W.2d 422, 424

9

our analysis on whether Harriman provided more than a scintilla of probative evidence that this breach proximately caused her alleged damages. *See* Tex. R. App. P. 47.1.

"Proximate cause consists of cause in fact and foreseeability." *Connaway v. Village Farms, L.P.*, 200 S.W.3d 353, 356 (Tex. App.—Dallas 2006, no pet.) (citing *Sw. Key Program, Inc. v. Gil-Perez*, 81 S.W.3d 269, 274 (Tex. 2002); *Doe v. Boys Club of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)); *see also Avery Pharm., Inc. v. Haynes and Boone, L.L.P.*, No. 2-07-317-CV, 2009 WL 279334, at *7 (Tex. App.—Fort Worth Feb. 5, 2009, no pet.) (mem. op.) (citing *Rodgers v. Weatherspoon*, 141 S.W.3d 342, 345 (Tex. App.—Dallas 2004, no pet.)). "These elements cannot be established by mere conjecture, guess, or speculation." *Connaway*, 200 S.W.3d at 356 (citing *Doe*, 907 S.W.2d at 477). To establish cause in fact, the plaintiff must show that "the defendant's acts or

---

(Tex. App.—San Antonio 1995, writ denied). Because expert testimony is generally required to prove the standard of care, *see Ulrickson v. Hibbs*, No. 2-02-161-CV, 2003 WL 22514689, at *6 (Tex. App.—Fort Worth Nov. 6, 2003, no pet.) (mem. op.), it logically follows that to show an attorney's actions fell below that standard of care and thereby caused the client's injury would also require expert testimony. Such testimony can be evidenced in an affidavit made on personal knowledge and setting forth facts that would be admissible in evidence and may not include legal conclusions. *See Hall*, 911 S.W.2d at 424 (citing Tex. R. Civ. P. 166a(f); *Beta Supply, Inc. v. G.E.A. Power Cooling Sys., Inc.*, 748 S.W.2d 541, 542 (Tex. App.—Houston [1st Dist.] 1988, writ denied); *Harbour Heights Dev., Inc. v. Seaback*, 596 S.W.2d 296, 297 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ)). The testimony—or sworn affidavit—of a lay witness is not competent to controvert an expert witness's opinion. *Id.* The affidavit from Hyman does not discuss the standard of care owed to Harriman and Harriman provides no expert affidavit at all. Effectively, neither party provides proper expert evidence in this case as to the breach of duty element. This lack of expert evidence is likewise problematic for Harriman's proximate cause argument.

omissions were a substantial factor in bringing about the injury that would not otherwise have occurred." *Avery Pharm., Inc.*, 2009 WL 279334, at \*7. It is not enough to show that the defendant's negligence *merely contributed to a condition* that made the plaintiff's injury possible. *Connaway*, 200 S.W.3d at 356 (citing *Doe*, 907 S.W.2d at 477) (emphasis added). Like cause in fact, foreseeability requires more than speculation—the test considers whether the alleged negligent act or omission was the type that should have been reasonably anticipated to cause the plaintiff's injury. *Id.* at 357 (citing *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 737 (Tex. 1998); *Phan Son Van v. Pena*, 990 S.W.2d 751, 755 (Tex. 1999)).

## C. ANALYSIS

In Harriman's original petition, she alleged that the Hyman Appellees had violated the duties owed to her under their lawyer-client relationship. Harriman provided a list of the ways[11] she believed that the Hyman Appellees deviated from these duties and "fail[ed] to exercise ordinary skill and knowledge." Harriman then claimed that, as a direct and proximate cause of these actions, she suffered "actual damages,

---

[11]The allegations included that the Hyman Appellees improperly stipulated that Harriman had notice of the motion to seal, had failed to advise the Bexar County district court that Harriman already had a copy of the Boyle file, had failed to prevent Harriman's affirmative claims in the Underlying Lawsuit from "being compromised," had failed to protect Harriman's interests to allow her to pursue her claims, had failed to keep Harriman "properly informed" and had misled her in material ways, and finally, had done "things that required [Harriman] to spend more money on legal fees and other expenses." The petition also allowed for any "other particulars" that would be established during discovery.

11

special damages, incidental damages, and punitive damages, all in an amount to be proven at trial."

The Hyman Appellees' no-evidence motion for summary judgment argued that Harriman provided no evidence that Hyman's stipulation at the 2017 hearing proximately caused any damages. To support this assertion, the Hyman Appellees claimed that the lack of explanation from the Bexar County district court regarding the denial of Harriman's motion to unseal and the simultaneous denial of the same relief requested by the trustee—who "undisputedly had no prior notice of the . . . motion to seal"—indicated that the stipulation to Harriman's notice of the final sealing order hearing did not impact the outcome of the 2017 hearing.

In her response to the summary judgment motions, Harriman asserted that her damages stemmed from: (1) the failure to "introduce evidence already in [Hyman's] possession to show the truth of [Harriman's] allegedly defamatory statements" in the Underlying Lawsuit; (2) the decision not to tell the Bexar County district court that Harriman already had a copy of the Boyle files; and (3) the stipulation to "fraudulent" evidence during the hearing without first consulting Harriman. According to Harriman, these failures caused her to "settle her case for millions less than she was entitled to, release valuable affirmative claims, and incur additional attorneys' fees." Harriman claimed the "unauthorized (and incorrect) stipulation [] regarding the Purported

12

Email"[12] and Hyman's failure to inform the Bexar County district court that Harriman had a copy of the Boyle files, caused the trial court to deny the motion to unseal the Boyle files, thereby impacting the outcome of the Underlying Lawsuit.

The Hyman Appellees, in the reply to Harriman's response, argued that Harriman can only speculate that the stipulation during the 2017 hearing caused the Bexar County district court to deny the motion to unseal the Boyle files. The Bexar County district court provided no explanation for its decision, and the other party that participated in the hearing—who made no such stipulation regarding prior notice—was also denied the requested access to the sealed Boyle files. Thus, we agree that Harriman can only speculate as to the reason that the Bexar County district court denied the motion to unseal the Boyle files. There is nothing in the petition or in the response to the summary judgment motions to support Harriman's hypotheses. Because speculation is not sufficient to prove causation, Harriman failed to meet her summary judgment burden. *See Connaway*, 200 S.W.3d at 356.

Harriman also claims that Hyman's refusal to use her copy of the Boyle files was the proximate cause of an unfavorable settlement agreement—requiring her to abandon

---

[12]Harriman admitted that she has not seen a copy of this e-mail, and we note that it was not admitted as an exhibit during the 2017 hearing. Hyman claims that she chose to stipulate to Harriman's notice of the final sealing order to avoid a possible continuance and to prevent Harriman from having to sit for a deposition, since that notice was, in her opinion, immaterial to Harriman's ability to move to unseal the Boyle files.

her "valuable affirmative claims during [the] settlement negotiations." Harriman maintains that she would have been able to "resolve the case more favorably" had she been able to use her copy of the Boyle files. To support this, Harriman points to Hyman's deposition—one page of which was attached to her summary judgment response—where Hyman purportedly stated that, "It was very clear that the case was not going to settle if she did not dismiss her affirmative claims." In response, the Hyman Appellees pointed out that "[Harriman]—*by her own admission*—was aware of [the] failure [to use the Boyle files] before entering into the settlement agreement." (Emphasis in original).

By definition, settlement agreements are the product of give and take between parties. *See Frew v. Hawkins*, No. 3:93-CA-065 WWJ, 2007 WL 2667985, at *29 (E.D. Tex. Sept. 5, 2007). Harriman points to nothing in the record—and provides no expert testimony—to support her claim that a more favorable settlement would have been reached had the copy of the Boyle file been used during the negotiations. In fact, she points to statements that support the opposite: Hyman stated that there would not have been a settlement at all without Harriman releasing her affirmative claims. Further, Harriman's response to the motions for summary judgment only provides vague, conclusory statements about how the key element of her defamation case "could have been readily proven with the Boyle file, which was available but not used by [the Hyman Appellees]." She does not provide any context or evidence to support this contention.

14

Thus, the trial court correctly determined that Harriman's claim is not supported by a scintilla of evidence. Harriman makes sweeping negative statements about the result of the settlement negotiations without pointing to any evidence in the record to support her claim that if the Boyle files had been used in those discussions, the result would have been different or more favorable. Conjecture, like speculation, is not enough to support the element of proximate cause—and Harriman failed to provide either direct or circumstantial evidence to support this element of her claim. *See Excel Corp. v. Apodaca*, 81 S.W.3d 817, 820 (Tex. 2002) (holding cause in fact may not be supported by conjecture, guess or speculation, but can be based on either direct or circumstantial evidence) (citing *Doe*, 907 S.W.2d at 477; *Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 459 (Tex. 1992)).

Because Harriman failed to meet her burden to present more than a scintilla of evidence showing that the Hyman Appellees' actions proximately caused any of her purported damages, we overrule her second issue. *See Alexander*, 146 S.W.3d at 117.

### III.  CONCLUSION

Having overruled Harriman's second issue—which is dispositive of this appeal—we affirm the trial court's order of summary judgment. *See* Tex. R. App. P. 47.1.

/s/ Brian Walker
Brian Walker
Justice

Delivered:  April 16, 2026

15